# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

**STEVEN D. GUNN, on behalf of himself and all others similarly situated**

      Plaintiff,

      vs.

**E-VERIFILE.COM, INC., et al.**

      Defendants.

CASE NO. 3:19-cv-00176-TSL-LRA

DISTRICT JUDGE TOM S. LEE

MAGISTRATE JUDGE LINDA R. ANDERSON

## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF INCENTIVE AWARD TO PLAINTIFF, AND AWARD OF ATTORNEYS' FEES AND EXPENSES TO CLASS COUNSEL

Plaintiff, Steven D. Gunn, on behalf of himself and all others similarly situated, respectfully requests that the Court enter a final order approving the class action settlement, approving an incentive award to plaintiff, and awarding attorneys' fees and expenses to Class Counsel. A supporting memorandum is attached.

Respectfully submitted,

*/s/ Christopher Kittell*
Christopher E. Kittell
THE KITTELL LAW FIRM
P. O. Box 568
2464 Church Street, Suite A
Hernando, MS 38632
Tel: (662) 298-3456
Fax: (855) 896-8772
Email: ckittell@kittell-law.com

O'TOOLE, McLAUGHLIN, DOOLEY
& PECORA CO., LPA.
Matthew A. Dooley (0081482)
5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone:    (440) 930-4001

Facsimile:      (440) 934-7208
Email:          mdooley@omdplaw.com
*Counsel for Steven Gunn and the putative class*

## TABLE OF CONTENTS

MEMORANDUM IN SUPPORT ................................................................................................. 1

I.      INTRODUCTION ......................................................................................................... 1

II.     THE SETTLEMENT NOTICE PROCESS .................................................................. 2

    A.  Notice Program. ........................................................................................................ 2

    B.  Number of Claims Filed. ........................................................................................... 3

    C.  Number of Exclusions and Objections. .................................................................... 3

    D.  CAFA Notice. ............................................................................................................ 3

    E.  The Notice Program satisfies Rule 23 and due process considerations. .................. 3

III.    THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE ........................ 4

IV.     GUNN'S REQUESTED SERVICE AWARD .............................................................. 6

V.      CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS ....................................... 7

    A.  The time and labor required for the litigation. ......................................................... 8

    B.  The novelty and complexity of the issues. ................................................................ 9

    C.  The attorneys' customary fee .................................................................................... 9

    D.  Whether the fee is fixed or contingent. .................................................................. 10

    E.  Whether the client or case circumstances imposed any time constraints. .............. 10

    F.  The amount involved and the results obtained. ...................................................... 11

    G.  The experience, reputation, and ability of the attorneys. ....................................... 11

    H.  Whether the case was "undesirable". ..................................................................... 11

    I.  The type of attorney-client relationship and whether that relationship was longstanding. 12

    J.  Awards made in similar cases. ................................................................................ 12

    K.  Lodestar cross-check .............................................................................................. 13

VI.     CONCLUSION ........................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Cases**

*Barrera v. Nat'l Crane Corp.*,
2012 WL 242828 (W.D.Tex.2012) ............................................................ 20

*Black v. SettlePou, P.C.*,
732 F.3d 492 (5th Cir. 2013) .................................................................. 21

*Blum*,
465 U.S. ............................................................................................ 17

*Burford v. Cargill, Inc.*,
2012 WL 5471985 (W.D. La. Nov. 8, 2012) ...................................... 19, 21

*Camp v. Progressive Corp.*,
2004 WL 2149079 (Sept. 23, 2004) ........................................................ 13

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
2015 U.S. Dist. LEXIS 26053 at *3-4 (W.D. La. Feb. 11, 2015) ............. 14

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) .............................................................. 12

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) .................................................... 12, 13

*DeJulius v. New England Health Care Employees Pension Fund*,
429 F.3d 935 (10th Cir. 2005) .............................................................. 11

*Di Giacomo v. Plains All Am. Pipeline*,
2001 U.S. Dist. LEXIS 25532 *29 (S.D. Tex. Dec. 18, 2001) ................. 15

*Dukes v. Air Canada*,
No. 8:18-cv-2176, 2020 WL 487152 (M.D. Fla. Jan. 27, 2020) ............... 9

*Duncan v. JPMorgan Chase Bank, N.A.*,
2016 WL 4419472 (May 24, 2016) ........................................................ 17

*Faircloth v. Certified Fin. Inc.*,
2001 WL 527489 (E.D.La. May 16, 2001) ............................................ 20

*Forbush*,
98 F.3d ............................................................................................ 14

*Garza v. Sporting Goods Properties, No. CIV. A. SA-93-CA-108*,
1996 U.S. Dist. LEXIS 2009, at *41 (W.D. Tex. Feb. 6, 1996) ............... 12

*In re Bayou Sorrel Class Action*,
   2006 WL 3230771 (W.D. La. Oct. 31, 2006) ......................................................... 19

*In re Catfish Antitrust Litig.*,
   939 F.Supp. 493 (N.D.Miss.1996) ................................................................. 14, 20

*In re Combustion*,
   968 F.Supp. ..................................................................................................... 20

*In re Granada P'ship Sec. Litigs.*,
   803 F.Supp. 1236 (S.D.Tex.1992) ..................................................................... 14

*In re Katrina Canal Breaches Litig.*,
   628 F.3d 185 (5th Cir. 2010) ............................................................................ 13

*In re Lease Oil Antitrust Litigation* (No. II),
   186 F.R.D. 403 (S.D.Tex.1999) ....................................................................... 14

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir.1977) ..................................................................... 11, 12

*In re OCA, Inc. Securities & Derivative Litigation*,
   2008 WL 4681369 (Oct. 17, 2008) .................................................................... 11

*In re Oil Spill*,
   910 F. Supp. 2d ........................................................................................ 11, 12

*In re Shell Oil Refinery*,
   155 F.R.D. 552 (E.D.La.1993) ......................................................................... 20

*In re Vioxx*,
   2013 WL 5295707 ............................................................................................ 20

*Jenkins v. Trustmark Nat'l Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) ..................................................................... 12

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ...................................................................... 14, 15

*Kemp v. Unum Life Ins. Co. of Am.*,
   No. CV 14-0944, 2015 WL 8526689 (E.D. La. Dec. 11, 2015) ......................... 15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306, (1950) ......................................................................................... 11

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) ............................................................................ 12

*Purdie v. Ace Cash Express, Inc.*,
   No. Civ. A. 301CV1754L, 2003 WL 22976611 (N.D.Tex. Dec.11, 2003)............................ 14

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) .................................................................................. 12, 13

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007)........................................................................................................ 16

*Shaw*,
   91 F.Supp.2d ................................................................................................................. 20

*Strong v. Bellsouth Telecomm., Inc.*,
   137 F.3d 844 (5th Cir. 1998) ........................................................................................ 21

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d .............................................................................................................. 13

*U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*,
   2014 WL 691500 (S.D. Miss. Feb. 21, 2014) ............................................................... 21

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 ....................................................................................................... 13, 14, 15

*Welsh v. Navy Fed. Credit Union*,
   2018 WL 7283639 (Aug. 20, 2018)............................................................................... 11

*White v. Experian Info. Solutions*,
   2014 U.S. Dist. LEXIS 61433 at *51 (C.D. Cal. May 1, 2014) ............................................ 16

**Statutes**

15 U.S.C. § 1681b(b)(3) ......................................................................................................... 9

15 U.S.C. § 1681n(a) ....................................................................................................... 16, 18

28 U.S.C. § 1715 .................................................................................................................... 10

**Rules**

F.R.C.P. 23(h) ....................................................................................................................... 14

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................................. 10, 11

Fed. R. Civ. P. 23(e) ............................................................................................................. 12

Federal Rule of Civil Procedure 23 ................................................................................. 10, 11

**Other Authorities**

4 Newberg on Class Actions § 14:6, p. 550–51.................................................................... 20

---

## MEMORANDUM IN SUPPORT[1]

---

### I.    INTRODUCTION

The nature of the litigation is well-known to the Court and concerns the Defendants' collective use of consumer reports to evaluate job applicants. In short, Plaintiff contends that the Defendants failed to provide proper notice to applicants when denying employment based upon an adverse consumer report. On March 16, 2020, the Court granted preliminary approval of the proposed class settlement and certified the Settlement Class (Doc. 91).

Importantly, the Settlement is the product of arm's-length negotiations with the assistance of the Honorable Morton Denlow, Ret. (JAMS) and provides significant benefits to Settlement Class Members. *See* https://www.jamsadr.com/denlow/ (last visited July 31, 2020). Specifically, Defendants established a $610,000.00 Settlement Fund from which Class Members who appealed the denial of their employment will receive an automatic payment. Those who were denied but who file a claim form are likewise entitled to a pro rata share of the Settlement Fund after deduction for costs, fees, and Plaintiff's service award.

If the Court approves Class Counsel's request for attorney fees of $203,333.00 (one-third of the Settlement Fund, and pro rata deductions are applied for litigation expenses, settlement administration costs and a $2,000 incentive award, the payments are presently estimated to be:

| Subclass | No. of Members | Gross Amount | Net Amount |
|---|---|---|---|
| No Appeal | 966[2] | $257.92 | $156.57 |
| Unsuccessful Appeal | 388 | $400.00 | $251.29 |
| Successful Appeal | 602 | $325.00 | $201.29 |
| RC | 40 | $250.00 | $151.29 |

---

[1] Capitalized terms used herein without definition have the meanings given in the Settlement Agreement and Release (Doc. 90-1)

[2] This reflects the total valid and timely claims submitted to date.

1

Such awards are consistent with settlements in similar FCRA class actions alleging violations of 15 U.S.C. § 1681b(b)(3). *See, e.g., Dukes v. Air Canada,* No. 8:18-cv-2176, 2020 WL 487152, at *5 (M.D. Fla. Jan. 27, 2020) (approving $83.22 per class member for alleged 1681b(b)(3) violation)*; Crosby v. Core-Mark Distributors, Inc.,* No. 1:15-cv-04918-SCJ-JFK, Doc. No. 47 (N.D. Ga. April 16, 2018) (approving $300 per class member for alleged 1681b(b)(3) violation)*; Reardon v. Closet Corp.,* No. 2:08-cv-01730, Doc. No. 213, 220 (W.D. Pa. June 13, 2014) (approving $400 per class member for alleged 1681b(b)(3) violation).

Settlement Class Members have until August 4, 2020[3], to submit claims, objections, and exclusion requests. To date, the Settlement Class has overwhelmingly indicated its approval of the settlement terms, with 966 valid claims filed thus far, no opt-outs, and no objections from Class Members.

## II.     THE SETTLEMENT NOTICE PROCESS

### A.  Notice Program.

After the Court granted preliminary approval, Defense Counsel provided Class Counsel and American Legal Claim Services, LLC (ALC) with a list of 7,353 unique names and addresses believed to be associated with the Settlement Class. (*See* Declaration of Keith Salhab, ¶ 4). ALC updated the addresses using the National Change of Address database. *Id*. ALC then mailed the notices on June 5, 2020 to each of the 7,353 class members with valid address (*Id*. ¶ 5). ALC re-mailed any notices that were returned with forwarding address information. (*Id*. ¶ 6). In all, 6,764 notices were delivered, or ***91.99%*** of the Preliminary Settlement Class. (*Id.* ¶7*)*. This percentage is well-within the Federal Judicial Center guidelines for adequate notice and satisfies due process.

---

[3] Class Counsel will submit an updated Affidavit from the Class Administrator that will include the final numbers claims submitted, objections, and exclusion requests on or before the Final Approval Hearing.

### B. Number of Claims Filed.

There were *966* valid claims timely filed in the case by members of the No Appeal Subclass (*Id*. ¶ 8). This represents a participation rate of *15.26%*, which exceeds the average rate in a consumer class action case, particularly amid a nationwide pandemic. *See* FTC Report dated September 2019 entitled *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* ("median claims rate [as a percentage of direct notice recipients is] 9%, and the weighted mean—where each case is weighted based on its number of notice recipients—was 4%").

### C. Number of Exclusions and Objections.

Out of 6,764 Class Members who received notice, *none* opted out or objected. (*See* Declaration of Keith Salhab, ¶¶ 10-11)

### D. CAFA Notice.

Pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, Notice of Proposed Class Action Settlement was mailed to the attorneys general of all 50 states plus the territory of Puerto Rico, the Attorney General of the United States, the District of Columbia's Corporate Counsel, the Attorney General for Guam, the Attorney General for American Samoa, the Attorney General for the US Virgin Islands, and the Attorney General for the Northern Mariana Islands via certified mail through the US Postal Service. (*Id*. ¶ 3). Class Counsel has not received any governmental comments or objections to the Settlement.

### E. The Notice Program satisfies Rule 23 and due process considerations.

Federal Rule of Civil Procedure 23 and the Due Process Clause require that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of

the pendency of the action and afford them an opportunity to present their objections." *In re OCA, Inc. Securities & Derivative Litigation*, 2008 WL 4681369, *15 (Oct. 17, 2008) (quoting *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005)). Still, "the type of notice to which a member of a class is entitled depends upon the information available to the parties about that person." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir.1977). Thus, neither Rule 23 nor due process requires actual notice to all class members who may be bound by the litigation. *In re OCA, Inc.*, WL 4681369 at 15.

As to content, Rule 23(c)(2)(B) requires that the notice provided to absent class members clearly and concisely state the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment. Fed. R. Civ. P. 23(c)(2)(B). The notice provided to Class Members conveys this information in easily understandable language. (Docs. 90-2, 90-3, 90-4 and 90-5).

In short, Settlement Class Members received the best practicable notice, which was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the settlement and afford them an opportunity to present their objections." *In re Oil Spill*, 910 F. Supp. 2d at 940 (quoting *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314, (1950)). The high participation rate, the lack of opt-outs and objections indicate that the terms of the Settlement were understood and approved by the class. *Welsh v. Navy Fed. Credit Union*, 2018 WL 7283639, *11 (Aug. 20, 2018).

## III.    THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

Court approval is required to finally settle any class action. Fed. R. Civ. P. 23(e). The Court

conducts this approval analysis bearing in mind that "[t]he public interest strongly favors the voluntary settlement of class actions." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 931 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). The "overriding public interest" manifests itself in a "strong presumption" in favor of finding the settlement fair, adequate, and reasonable. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007) (citing *Garza v. Sporting Goods Properties,* No. CIV. A. SA-93-CA-108, 1996 U.S. Dist. LEXIS 2009, at *41 (W.D. Tex. Feb. 6, 1996)). Indeed, "settlement agreements are highly favored in the law and will be upheld whenever possible because they are a mean of amicably resolving doubts and uncertainties and preventing lawsuits." *Jenkins v. Trustmark Nat'l Bank,* 300 F.R.D. 291, 301 (S.D. Miss. 2014) (quoting *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir. 1977)).

When reviewing a proposed settlement, the court "must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004). A district court has broad discretion to approve a class-action settlement under Rule 23(e). *DeHoyos*, 240 F.R.D. at 285-87. Importantly, the court "must not try the case." *Reed v. Gen. Motors Corp*., 703 F.2d 170, 172 (5th Cir. 1983). Rather, the inquiry is confined to assessing the fairness, reasonableness, and adequacy of the proposed settlement because the "very purpose of compromise is to avoid the delay and expense" of a trial. *Id.*

The Fifth Circuit established six factors to be considered in determining whether a settlement is "fair, adequate and reasonable": (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation;  (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success

on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n. 11 (5th Cir.2012) (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)); *see also In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 194-95 (5th Cir. 2010). Collectively, these are commonly known as the *Reed* factors.

Plaintiff previously articulated the facts supporting each of the six Reed factors in his Unopposed Motion for Preliminary Approval (Doc. 90, pp. 7-9) and in the interest of brevity, incorporates the argument herein. Moreover, with this analysis, the Court previously found that Plaintiff has indeed satisfied all *Reed* factors (Doc. 91, ¶ 6).

## IV.    GUNN'S REQUESTED SERVICE AWARD

The Settlement provides that Gunn may petition the Court for an incentive award in an amount not to exceed $2,000. (Doc. 90-1, ¶8.7) Courts "commonly permit payments to class representatives above those received in settlement by class members generally." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d at 830. Incentive awards are used in class action lawsuits to compensate named plaintiffs for the services they provide. *DeHoyos*, 240 F.R.D. at 339 (citations omitted). But for Plaintiff's efforts and contributions to the litigation—e.g., assisting Class Counsel with their pre-filing investigation, filing the case, and participating in the motion practice process—the settlement would not have been reached. (Bazaz Decl. ¶¶ 13-15).

Further, the proposed incentive award is far lower than awards approved in similar class action settlements. *See Camp v. Progressive Corp.,* 2004 WL 2149079, *7 (Sept. 23, 2004) (awarding up to $10,000 to each named plaintiff as compensation for total payment of $102,000); *Purdie v. Ace Cash Express, Inc.*, No. Civ. A. 301CV1754L, 2003 WL 22976611, at *7 (N.D.Tex. Dec.11, 2003) (awarding three named plaintiffs combined incentive award of $16,665); *In re Lease*

*Oil Antitrust Litigation* (No. II), 186 F.R.D. 403, 449 (S.D.Tex.1999) (awarding named plaintiffs up to $10,000 each for participating in lawsuit); *In re Catfish Antitrust Litig*., 939 F.Supp. 493, 504 (N.D.Miss.1996) (awarding each of four named plaintiffs $10,000 in compensation); *In re Granada P'ship Sec. Litigs*., 803 F.Supp. 1236, 1247 (S.D.Tex.1992) (granting request for compensation of $5,000 to representative class action plaintiffs). Accordingly, a $2,000.00 incentive award to Plaintiff is reasonable and should be approved.

## V.    CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS

In a class action like this case, the Federal Rules authorize the Court to award reasonable attorneys' fees as provided by law or the parties' agreement. F.R.C.P. 23(h). The Settlement Agreement provides that Class Counsel may request up to one-third of the Common Fund, or $203,333.00 as reimbursement for attorneys' fees. Nonetheless, the Fifth Circuit continues to recognize *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) as the framework to consider such an award. (Doc 90-1, ¶8.2.4) *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642 n.25 (5th Cir. 2012) (*quoting Forbush*, 98 F.3d at 823). Further, this Circuit has long acknowledged that the "common benefit" or "common fund" equitable doctrine allows for the assessment of attorneys' fees against a common fund created by the attorneys' efforts. *City of Omaha Police & Fire Ret. Sys. v. LHC Grp*., 2015 U.S. Dist. LEXIS 26053 at *3-4 (W.D. La. Feb. 11, 2015) (citations omitted).

In common fund cases, courts typically use one of two methods to calculate attorneys' fees: (1) the percentage method, in which the court awards fees as a percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applies an upward or downward multiplier. *Dell*, 669 F.3d at 642-43. In *Dell*, the Fifth Circuit joined the

majority of circuits in allowing district courts the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the *Johnson* considerations. *Id.*, at 644; *Kemp v. Unum Life Ins. Co. of Am.*, No. CV 14-0944, 2015 WL 8526689, at *8 (E.D. La. Dec. 11, 2015).

The twelve *Johnson* factors are (1) the time and labor required for the litigation; (2) the novelty and complexity of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether that relationship was longstanding; and (12) awards made in similar cases. *Johnson*, 488 F.2d at 717–19. Although Class Counsel will address each factor, "rarely are all the *Johnson* factors applicable; this is particularly so in a common fund situation." *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 *29 (S.D. Tex. Dec. 18, 2001) (citations omitted).

**A. The time and labor required for the litigation.**

A review of the effort and time expended by Class Counsel supports the requested fee. As shown *supra*, Class Counsel expended over 402.20 hours from the onset of the litigation through final approval and are expected to spend additional time facilitating payments to Class Members. Present, the three law firms representing the Class have incurred a lodestar fee of $172,101.50 and incurred costs in the amount of $11,197.91. *See* Decls. Dooley ¶¶ 13-14, and Bazaz ¶ 16. The work is summarized in the declarations of Class Counsel submitted herewith.

Class Counsel's work will continue beyond approval of the Settlement, with no additional

compensation due to the agreed cap, through the very end of the claims process on August 4, 2020. Accordingly, the time and labor already required along with the additional anticipated labor by Class Counsel to finally conclude this case, amply demonstrates the reasonableness of the attorneys' fees request.

### B. The novelty and complexity of the issues.

"The FCRA, particularly in the class action context, is a complex and challenging area of law." *White v. Experian Info. Solutions*, 2014 U.S. Dist. LEXIS 61433 at *51 (C.D. Cal. May 1, 2014). Because Class Members' claims are dependent upon the recovery of statutory and punitive damages, any recovery for the Class must be predicated on a finding that Defendants willfully or recklessly violated the FCRA. *See* 15 U.S.C. § 1681n(a).  This can be a challenging proposition, and a death knell to certification if unsuccessful. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).

Further, Class Members' claims could be weakened by other factors, including jury nullification. Indeed, many Class Members may possess a criminal conviction. The rights protected by the FCRA provisions are critical, but it is possible that a jury could find them merely technical or immaterial rights. The complexity of the factual and legal issues and the potential risks presented by this litigation strongly support the reasonableness of Class Counsel's requested attorneys' fees.

### C. The attorneys' customary fee

Class Counsel's rates in this case range from $195.00 per hour for paralegals to $500.00 per hour for partners. *See* Decls. Dooley ¶ 12, and Bazaz ¶ 16. These rates are reasonable and in line with rates that courts in this District have approved for consumer litigation. *See e.g.*, *Duncan v. JPMorgan Chase Bank, N.A.*, 2016 WL 4419472, *15 (May 24, 2016), report and

recommendation adopted, 2016 WL 4411551 (June 17, 2016) (finding class counsel's hourly rates of $500 for partner and $300 for associate reasonable in FCRA case); .

**D.  Whether the fee is fixed or contingent.**

Fees in class action lawsuits of this nature are contingent because virtually no individual possesses a sufficiently large stake in the litigation to justify paying attorneys on an hourly basis. *See Purdie,* WL 22976611 at 9. Here, Class Counsel undertook this litigation on a wholly contingent basis and understood the inherent risks and challenges associated with prosecuting claims against well-funded railroads and a national consumer reporting agency. As three separate law firms united, Class Counsel assumed all the risks and financial burdens associated with the litigation and worked productively to secure a meaningful recovery for Class Members, all without any assurance that the time and out-of-pocket expenses would be reimbursed.

Indeed, because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result. Thus, the contingent nature of the case and the substantial risks involved in this complex litigation strongly support Class Counsel's fee request. *Blum*, 465 U.S. at 902 (Brennan, J. concurring) (noting "the risk of not prevailing, and therefore the risk of not recovering any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee.")

**E.  Whether the client or case circumstances imposed any time constraints.**

Class Counsel and the other lawyers pursuing this litigation were forced to forgo other employment while working on this matter. This dynamic will continue beyond final approval, as Class Counsel is obligated to oversee the final distribution of payments to Class Members and address any challenges that may arise, including the potential distribution of unclaimed funds to a *cy pres* beneficiary.

**F. The amount involved and the results obtained.**

Under the Settlement, Class Members will receive real monetary relief that is well within the statutory recovery range available for the alleged violations. *See* 15 U.S.C. § 1681n(a) (providing for statutory damages between $100 and $1,000). Indeed, Class Members could have proceeded all the way through trial, won, and still recovered less than what they will recover under this Settlement. And considering the risks that if the litigation continued, Class Members could be left with no recovery at all. At bottom, the settlement is a solid result that provides direct monetary benefits to Class Members who realistically would not have filed their own individual lawsuits because the vast majority of such cases would have been too small to bring on their own.

**G. The experience, reputation, and ability of the attorneys.**

Despite the challenges involved, Class Counsel were able to litigate this case efficiently because of their experience in litigating consumer class action cases generally and FCRA class actions in particular. *See* Decls. Dooley ¶¶ 10-11, and Bazaz ¶¶ 8-9. This depth of experience in complex consumer class action litigation allowed Class Counsel to pursue the case and negotiate a settlement that capitalized on the claims' strengths while considering the risks of continued litigation. Courts should specifically consider the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one. *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K (N.D. Tex. Nov. 8, 2005).

**H. Whether the case was "undesirable".**

Risks in complex class litigation are ever present, and one could find endless examples of class cases in which plaintiffs succeeded at trial on liability but recovered little or no damages after trial or an appeal. Given the nuances of federal consumer litigation, few law firms are positioned to undertake such cases – particularly in a class action setting. Thus, the vast majority of attorneys

find such cases not undesirable given the merits but are simply unwilling to commit the time and resources necessary to generate a recovery against well-funded defendants with talented counsel. Here, Class Counsel have developed a niche for such claims with well over a decade of successful results, and a commitment to aggrieved consumers. Moreover, "[w]here class counsel is 'a relatively small group of attorneys with limited resources pitted against ... [a larger entity] with access to enormous legal resources,' [this] factor weighs in favor of a substantial fee." *Burford v. Cargill, Inc.*, 2012 WL 5471985, at *5 (W.D. La. Nov. 8, 2012) (quoting *In re Bayou Sorrel Class Action*, 2006 WL 3230771, at *6 (W.D. La. Oct. 31, 2006)).

## I. The type of attorney-client relationship and whether that relationship was longstanding.

Class Counsel has represented Mr. Gunn since 2017 (*See* Decl. Bazaz. ¶ 11), working closely with him to clear inaccuracies in his consumer reports. *Id.* ¶ 12. Class counsel and Mr. Gunn have been in constant communication during the pendency of this case. Indeed, he has been very involved in this case and provided valuable insight into his experience, life and how these inaccuracies have affected his life and loved ones. *Id.* ¶¶ 14-15. The relationship between counsel and Mr. Gunn will continue to ensure the restoration of his good name. *Id.* ¶ 12.

## J. Awards made in similar cases.

Here, Class Counsel seek an attorney fee equal to one-third of the Settlement Fund, which matches the fee typically awarded in similar cases. Indeed, numerous decisions have found that a one-third recovery is well within the range of a customary fee. *See Smith v. Tower Loan of Mississippi, Inc.*, CIV.A. 1:98CV212BRR, (S.D. Miss. 2003), aff'd sub nom; *Smith v. Crystian*, 03-60339, (5th Cir. 2004) ("upper end of 50%; securities and antitrust litigation 20% to 33 1/3%; 'mega-fund settlements' more than 15%; multiple instances of 33 ⅓ awards") (quoting 4 Newberg on Class Actions § 14:6, p. 550–51). *Shaw*, 91 F.Supp.2d at 972 ("Empirical studies show that ...

fee awards in class actions average around one third of the recovery"); *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D.La.1993) (awarding "1/3 in fees from a settlement fund of $170,000,000") (cited in *In re Combustion*, 968 F.Supp. at 1139); *In re Combustion*, 968 F.Supp.at 1136, 1142 (awarding 36% on a settlement fund of $127,396,000); *Teichler v. DSC Commc'ns Corp.*, CA 3–85–2005–T (N.D.Tex. Oct. 22, 1990) ("plaintiffs' counsel awarded $10 million on a settlement of $30 million in securities class action") (cited in *In re Catfish Antitrust Litig.*, 939 F.Supp. at 500); *Kleinman v. Harris*, Civil Action No. 3:89–CV–1869–X (N.D. Tex. June 21, 1993) ("approving fee of approximately one-third of benefit achieved of $1,170,000") (cited in *In re Catfish Antitrust Litig.*, 939 F.Supp. at 500); *Faircloth v. Certified Fin. Inc*., 2001 WL 527489, *9 (E.D.La. May 16, 2001) (awarding 33.34% on a $1,534,321 settlement fund); *In re Vioxx*, 2013 WL 5295707, at *4–5 (awarding 33%); *Barrera v. Nat'l Crane Corp*., 2012 WL 242828, at *5 (W.D.Tex.2012) (awarding one third); *Finkel v. Docutel/Olivetta Corp*., CA3–84–0566–T (N.D.Tex. Feb. 23, 1990) ("awarding fees amounting to 33% of settlement fund") (cited in *In re Catfish Antitrust Litig.*, 939 F.Supp. at 500); *In re Lomas Fin. Corp. Sec. Litig*., No.CA–3–89–1962–G (N.D.Tex. Jan. 28, 1992) ("approving fee of almost one-third of benefit") (cited in *In re Combustion*, 968 F.Supp. at 1139); *Jenkins v. Trustmark National Bank*, No. 3:12-cv-0380 (N.D. MS March 25, 2014) (approving "a fee of one-third (33.33%) of the $4,000,000 Settlement Fund, plus expenses"); *Kemp v. Unum Life Insurance*, No. 14-0944 (E.D. La December 11, 2015 (awarding a fee award of 1/3 of the total settlement fund).

### K. Lodestar cross-check

Under the lodestar method, the court first multiplies the reasonable number of hours spent working on the case by the reasonable hourly rate for the attorney to determine the lodestar figure. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). This Court has previously held

that a $500 hourly rate is proper in this jurisdiction for an experienced attorney handling complex litigation. *See U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co*., 2014 WL 691500, at *14 (S.D. Miss. Feb. 21, 2014).

Collectively, Class Counsel's lodestar is approximately $172.101.50. *See* Decls. Dooley ¶ 13, and Bazaz ¶ 16. "There is a strong presumption of the reasonableness of the lodestar amount." *Blac*k, 732 F.3d at 502. However, the court must consider the *Johnson* factors to determine whether the lodestar figure should be adjusted upward or downward. *Strong v. Bellsouth Telecomm., Inc*., 137 F.3d 844, 850 (5th Cir. 1998). Based on the *Johnson* factors addressed above, a modest multiplier of only 1.18 is appropriate. See *Burford v. Cargill, Inc.*, 2012 WL 5471985, at FN 1 (W.D. La. Nov. 8, 2012) (finding a 1.78 multiplier to be reasonable and noting that such multipliers between 1 and 4 are "typically approved by courts within this circuit.").

## VI.    CONCLUSION

Based upon the foregoing argument, Plaintiff and Class Counsel respectfully request that this Court enter a final judgment (1) granting final approval of the Settlement, (2) approving the requested incentive award for the Class Representative; (3) awarding Class Counsel attorneys' fees in the amount of $203,333.00 and reimbursing expenses in the amount of $11,197.91; and (4) dismissing the action with prejudice.

Respectfully Submitted,

*/s/ Christopher Kittell*
Christopher E. Kittell
THE KITTELL LAW FIRM
P. O. Box 568
2464 Church Street, Suite A
Hernando, MS 38632
Tel: (662) 298-3456
Fax: (855) 896-8772
Email: ckittell@kittell-law.com

O'TOOLE, McLAUGHLIN, DOOLEY
& PECORA CO., LPA.
Matthew A. Dooley
5455 Detroit Road
Sheffield Village, OH 44054
Tel: (440) 930-4001
Fax: (440) 934-7208
Email:  mdooley@omdplaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Christopher Kittell, attorney for Plaintiff, do hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all attorneys registered to receive ECF notices on this matter.

This the 31st day of July 2020.

*/s/ Christopher Kittell*
Christopher E. Kittell
*Counsel for Plaintiff*